Brian F. Ladenburg, *Pro Hac Vice*
Washington Bar No. 29531
MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
1200 Fifth Avenue, Suite 1400
Seattle, WA 98101
Phone: (800) 358-5922 /Fax: (314) 241-4838
bladenburg@mrhfmlaw.com
*Attorneys for Jordan J. Potter*

Lawrence E. Mittin, Esq.
Nevada Bar No. 005428
CRAIG P. KENNY & ASSOCIATES
501 S. 8th Street
Las Vegas, NV 89101
(702) 380-2800 / Fax: (702) 380-2833
lmittin@cpklaw.com
*Attorneys for Jordan J. Potter*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JUNE POTTER, as Special Administrator for the Estate of JORDAN J. POTTER, deceased,<br><br>Plaintiff,<br><br>v.<br><br>ARROWHEAD PRODUCTS, individually and as successor in interest to Arrowhead Rubber Company;<br>CRANE CO.;<br>GENERAL ELECTRIC COMPANY;<br>HENKEL CORPORATION as successor-in-interest to Loctite Corporation and Dexter Hysol;<br>INDUSTRIAL MANUFACTURING COMPANY, as successor in interest to Arrowhead Products and Arrowhead Rubber Company;<br>NORTHROP GRUMMAN CORPORATION;<br>PARKER-HANNIFIN CORPORATION, individually and as successor-in-interest to Cleveland Wheel & Brake and Stratoflex Products; | CASE NO.: 2:20-cv-00276-RFB-VCF<br><br><br><br><u>**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**</u> |

TELEFLEX INCORPORATED;
TITEFLEX COMMERCIAL INC.;
WYETH HOLDINGS LLC f/k/a Wyeth
   Holdings Corp. f/k/a American Cyanamid
   Corporation;
DOES 1 through 10, inclusive; and
ROE CORPORATIONS 1 through 50,
inclusive,

            Defendants.

## JURISDICTION AND VENUE

1.    Plaintiff June Potter, as Special Administrator for the Estate of Jordan J. Potter, deceased, is a resident of North Las Vegas, Clark County, Nevada. Prior to his death, Decedent Jordan J. Potter, was a resident of Las Vegas, Clark County, Nevada.

2.    Defendant Arrowhead Products, as successor in interest to Arrowhead Rubber Company, is a Delaware Corporation headquartered in Ohio and doing business in Clark County, State of Nevada.

3.    Defendant Crane Co. is a Delaware corporation headquartered in Connecticut and doing business in Clark County, State of Nevada.

4.    Defendant General Electric Company is a New York Corporation headquartered in Massachusetts and doing business in Clark County, State of Nevada.

5.    Defendant Henkel Corporation, as successor-in-interest to Loctite Corporation and Dexter Hysol, is a Delaware Corporation headquartered in Connecticut and doing business in Clark County, State of Nevada.

6.    Defendant Industrial Manufacturing Company, as successor in interest to Arrowhead Products and Arrowhead Rubber Company, is a Delaware Corporation headquartered in Ohio and doing business in Clark County, State of Nevada.;

7.    Defendant Northrop Grumman Corporation is a Delaware Corporation

headquartered in Virginia and doing business in Clark County, State of Nevada.

8. Defendant Parker-Hannifin Corporation, individually and as successor-in-interest to Cleveland Wheel & Brake and Stratoflex Products, is an Ohio Corporation headquartered in Ohio and doing business in Clark County, State of Nevada.

9. Defendant Teleflex Incorporated is a Delaware Corporation headquartered in Pennsylvania and doing business in Clark County, State of Nevada.

10. Defendant Titeflex Commercial Inc. is a Delaware Corporation headquartered in Massachusetts and doing business in Clark County, State of Nevada.

11. Defendant Wyeth Holdings LLC f/k/a Wyeth Holdings Corp. f/k/a American Cyanamid Corporation is a Maine limited liability company headquartered in New Jersey and doing business in Clark County, State of Nevada. This Court can exercise jurisdiction over the subject matter of this lawsuit pursuant to the provisions of 28 U.S.C. §1332, in that Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds $75,000.

12. Venue is proper pursuant to 28 U.S.C. §1391.

13. The judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendant occurred in the District of Nevada.

## COMPLAINT

## GENERAL ALLEGATIONS

14. Plaintiff incorporates paragraphs 1 through 13 of this Complaint as though fully set forth herein.

15. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOE 1 through 10, inclusive, and ROE CORPORATIONS 1 through 50, inclusive, are unknown to Plaintiff; therefore, Plaintiff sues those defendants by these

fictitious names. When the true names and capacities of said defendants have been ascertained, Plaintiff will amend this complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each defendant designated as a DOE or ROE CORPORATION is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and thereby directly and proximately caused injuries and damages to Decedent as alleged in this complaint.

16. Pursuant to NRS Section 41.141.5, each of the defendants is jointly and severally responsible and liable for the acts and/or omissions of co-defendants.

17. At all times herein mentioned, each of the named defendants and DOE defendants, was the successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, wholly or partially owned, or the whole or partial owner of or member in an entity engaged in the business of researching, studying, mining and/or milling, manufacturing, distributing, delivering, supplying, selling, marketing, labeling, re-labeling, retailing, specifying, recommending, using, installing, and/or removing asbestos and/or asbestos-containing materials and products. Said entities shall hereinafter collectively be called "alternate entities". Each of the defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or whole or partially owned entity or entity that it was a member of or funded, that researched, studied, mined and/or milled, manufactured, distributed, delivered, supplied, sold, marketed, labeled, re-labeled, retailed, specified, recommended, used, installed, and/or removed asbestos and/or asbestos-containing materials and products. Each of the following defendants is liable for the acts of each and every "alternate entity" in that there has been a virtual destruction of Plaintiff's remedy against each such alternate entity; each defendant has acquired the assets,

product line, or a portion thereof, of each such alternate entity; each defendant has the ability to assume the risk-spreading role of each such alternate entity; and that each defendant enjoys the goodwill originally attached to each such alternate entity.

18. From approximately 1980 to 1999, Decedent Jordan Potter's father, James Potter, served as an aircraft mechanic in the United States Air Force. From approximately 1980 through 1984 and again from approximately 1992 through 1994, James Potter was stationed at Royal Air Force Upper Heyford in England. From approximately 1984 through 1991, James Potter was stationed at Royal Air Force Alconbury in England. In approximately 1994 through 1999, James Potter was stationed at Nellis Air Force Base near Las Vegas, Nevada.

19. James Potter performed repairs to aircraft, including, but not limited to, engine work and maintenance, repair and replacement of hoses, clamps, grommets, gaskets, fire sleeves, brakes and other component parts. These component parts contained asbestos which had been mined, milled, manufactured, distributed, delivered, supplied, sold, marketed, labeled, re-labeled, specified, recommended, used and/or installed by defendants and/or the alternate entities.

20. In the 1980s, James Potter engaged in non-occupational automotive repairs, including the replacement of brakes on family vehicles. Component parts of the brakes contained asbestos which had been mined, milled, manufactured, distributed, delivered, supplied, sold, marketed, labeled, re-labeled, specified, recommended, used and/or installed by defendants and/or the alternate entities.

21. During James Potter's work with and around asbestos-containing products, to include in the aforementioned occupational and non-occupational activities, asbestos-laden dust created by working with and around asbestos and asbestos-containing products would accumulate on his skin, hair and clothing. This dust contained large amounts of asbestos fiber.

He brought asbestos fibers from his work with and around asbestos and asbestos-containing products into the family home and vehicles. The asbestos fibers would become airborne at the family home and vehicles when he entered. As a result, Decedent Jordan J. Potter was repeatedly exposed to, inhaled, and breathed asbestos fibers originating from his father working with asbestos-containing products, as well as when the family home became contaminated with dust containing asbestos fibers.

22. Decedent Jordan J. Potter was exposed to asbestos and/or asbestos-containing products, which had been mined, manufactured, produced, supplied, distributed, used, and/or placed into the stream of commerce by defendants and/or the alternate entities and/or was exposed to asbestos through the use of products manufactured by defendants and/or the alternate entities. As a direct and proximate result of this exposure, Decedent Jordan J. Potter developed mesothelioma, and subsequently died.

23. Decedent Jordan J. Potter suffered from an asbestos-related cancer, including but not limited to, mesothelioma. Plaintiff first became aware that Decedent suffered from said disease on or about November 27, 2018, and subsequently thereto, became aware that the same was wrongfully caused. Jordan J. Potter died from mesothelioma on February 12, 2022.

24. Defendants purposefully availed themselves of the privilege of conducting activities in Nevada when they sold aircraft and component parts to the United States Air Force (USAF) or to companies that did business with the USAF. By contracting with the USAF or selling to companies that did and manufacturing and selling military aircraft and component parts, Defendants targeted their activity at those states with USAF bases and exhibited an intent and purpose to serve those markets. Defendants are sophisticated military contractors or suppliers to military contractors that knew the planes and component parts they manufactured would be

stationed at a limited number of USAF bases, including Nellis AFB in Nevada. They also knew that the planes and parts would be inspected, maintained, repaired and used at Nellis AFB by the USAF mechanics stationed there. The Defendants knew that injuries suffered from exposure to their asbestos-containing components would occur in states with USAF bases including Nevada. Plaintiff's claims arise out of and relate to these activities and actions directed at the State of Nevada, and the exercise of jurisdiction over Defendants is reasonable.

25. As a direct and proximate result of one or more of the foregoing acts or omissions on the part of Defendants mentioned above, Decedent Jordan J. Potter inhaled, breathed in, or was otherwise exposed to asbestos fibers, causing Decedent to develop the asbestos cancer aforesaid, which severely disabled, disfigured, and injured him; Decedent was compelled to expend and became liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced cancer and conditions; Decedent experienced great physical pain and mental anguish as a result of the inhalation of and exposure to said asbestos fibers; and Jordan J. Potter died from mesothelioma on February 12, 2022.

### FIRST CAUSE OF ACTION

(Negligence)

26. Plaintiff incorporates paragraphs 1 through 25 of this complaint as though fully set forth herein.

27. At all times herein relevant, defendants and/or the alternate entities had a duty to exercise reasonable care and caution for the safety of Decedent Jordan J. Potter and others working with and around the asbestos-containing products of defendants and/or the alternate entities.

28. Defendants and/or the alternate entities knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, breathing, or otherwise being exposed to them. Moreover, defendants and/or the alternate entities knew or should have known asbestos is a carcinogen.

29. Defendants and/or the alternate entities breached their duty and failed to exercise reasonable care for the safety of Decedent Jordan J. Potter by including asbestos in their products, even though it was reasonably foreseeable and could or should have been anticipated that persons such as James Potter working with or around them would carry the asbestos fibers on his person, hair and clothing into the family home and vehicles where it would become airborne again and Decedent Jordan J. Potter would inhale, breathe or otherwise be exposed to great amounts of that asbestos.

30. Defendants and/or the alternate entities failed to exercise reasonable care for the safety of Decedent Jordan J. Potter by including asbestos in their products when defendants and/or the alternate entities knew or should have known that said asbestos fibers would have a carcinogenic, toxic, poisonous, and/or highly deleterious effect upon the health of persons inhaling, breathing, and/or otherwise being exposed to them.

31. Defendants and/or the alternate entities failed to provide any or adequate warnings to persons working with and around the products of the dangers of being exposed to the asbestos fibers contained in them and how to avoid carrying the asbestos fibers on their person, hair and clothing into the family home and vehicles.

32. Defendants and/or the alternate entities failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid being exposed to the asbestos fibers in them and how to

avoid carrying the asbestos fibers on their person, hair and clothing into the family home and vehicles.

33. Defendants and/or the alternate entities failed to exercise reasonable care for the safety of Decedent Jordan J. Potter by failing to conduct tests on the asbestos-containing products designed, manufactured, sold, distributed, delivered, processed, specified, applied, and/or installed by defendants and/or the alternate entities to determine the hazards to which workers such as James Potter and those he came into contact with might be exposed as a result of working with the products.

34. Defendants and/or the alternate entities failed to exercise reasonable care for the safety of Decedent Jordan J. Potter when they designed, manufactured, sold, distributed, delivered, processed, specified, applied, and/or installed equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

35. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter suffered permanent injuries to his person and the mental and emotional distress attendant thereto all to his general damage in a sum in excess of $75,000.00.

36. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount being unknown to Plaintiff at this time, but Plaintiff prays leave to amend this complaint when the true and exact cost is ascertained.

37. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are still unknown; therefore, Plaintiff will request leave to amend this complaint to conform to proof at the time of trial.

38. Defendants' and/or the alternate entities' conduct, as described herein, was intended by defendants and/or the alternate entities to cause injury to Decedent or was carried on by these defendants and/or the alternate entities with such conscious disregard for the safety and health of persons such as Decedent who were exposed to asbestos as to be willful, malicious, oppressive, fraudulent and outrageous under NRS Section 42.005, thereby entitling Decedent to punitive damages in the amount in excess of $75,000 against defendants, each of them.

39. Due to defendants' and/or the alternate entities' conduct, it has become necessary for Plaintiff to retain the law firm of MAUNE RAICHLE FRENCH & MUDD LLC and CRAIG P. KENNY & ASSOCIATES to prosecute this action, and Plaintiff is entitled to reasonable attorneys' fees and costs incurred therein.

## SECOND CAUSE OF ACTION

(Strict Liability)

40. Plaintiff incorporates paragraphs 1 through 39 of this complaint as though fully set forth herein.

41. Defendants' and/or the alternate entities' asbestos and asbestos-containing products were defective and unsafe for their intended purpose which rendered them unreasonably dangerous since the inhalation of asbestos fibers causes serious disease and/or death.

42. Persons exposed to the asbestos fibers in defendants' and/or their alternate entities' asbestos and/or asbestos-containing products did not know of the substantial danger of using said products. The dangers were not readily recognizable by exposed persons. Defendants and/or the alternate entities failed to adequately warn of the risks to which Decedent Jordan J. Potter and others similarly situated were exposed.

43. The defect existed in the said products at the time they left the possession of the defendants and/or the alternate entities.

44. James Potter's reasonably foreseeable work with and around defendants' and/or their alternate entities' asbestos-containing products, to include in the aforementioned occupational and non-occupational activities, created asbestos-laden dust that he brought into the family home and vehicles and to which Decedent Jordan J. Potter was repeatedly exposed, inhaled, and breathed.

45. Said defective products caused personal injury to Decedent Jordan J. Potter in that Decedent Jordan J. Potter suffered from mesothelioma, an incurable cancer caused only by exposure to asbestos.

46. Defendants and/or the alternate entities, and each of them, researched, studied, mined and/or milled, manufactured, distributed, delivered, supplied, sold, marketed, labeled, re-labeled, retailed, specified, recommended, used, installed, and/or removed asbestos and/or asbestos-containing materials and products with conscious disregard for the safety of exposed persons who came into contact with said asbestos and/or asbestos-containing product.

47. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter suffered permanent injuries to his person and the

mental and emotional distress attendant thereto all to his general damage in a sum in excess of $75,000.00.

48.     As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount being unknown to Plaintiff at this time, but Plaintiff prays leave to amend this complaint when the true and exact cost is ascertained.

49.     As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are still unknown; therefore, Plaintiff will request leave to amend this complaint to conform to proof at the time of trial.

50.     Defendants' and/or the alternate entities' conduct, as described herein, was intended by defendants and/or the alternate entities to cause injury to Decedent or was carried on by these defendants and/or the alternate entities with such conscious disregard for the safety and health of persons such as Decedent who were exposed to asbestos as to be willful, malicious, oppressive, fraudulent and outrageous under NRS Section 42.005, thereby entitling Decedent to punitive damages in the amount in excess of $75,000 against defendants, each of them.

51.     Due to defendants' and/or the alternate entities' conduct, it has become necessary for Plaintiff to retain the law firm of MAUNE RAICHLE FRENCH & MUDD LLC and CRAIG P. KENNY & ASSOCIATES to prosecute this action, and Plaintiff is entitled to reasonable attorneys' fees and costs incurred therein.

### Third Cause of Action

(Civil Conspiracy)

52. Plaintiff incorporates paragraphs 1 through 51 of this complaint as though fully set forth herein, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

53. Defendants and/or the alternate entities, individually, together and/or as a group, have possessed since 1929 medical and scientific data which indicated that asbestos-containing insulation and other materials were hazardous to health. Prompted by pecuniary motives, Defendants and/or the alternate entities, formed a conspiracy agreement to unlawfully harm persons exposed to asbestos, including Decedent Jordan J. Potter.

54. In furtherance of this conspiracy agreement, defendants and/or the alternate entities, individually, together, and/or as a group, willfully and wantonly ignored and/or failed to act upon said medical and scientific data. Rather, they conspired together to deceive and commit fraud upon the public in several aspects: by controlling industry-supported research in a manner inconsistent with the health and safety interest of users and consumers; by successfully tainting reports of medical and scientific data appearing in industry and medical literature; by suppressing the dissemination of certain medical and scientific information relating to the harmful effects of exposure to said products; and by prohibiting the publication of certain scientific and medical articles.

55. Such conspiratorial activities deprived the users, mechanics, laborers, and installers of defendants' and/or the alternate entities' asbestos and/or asbestos-containing products of the opportunity to determine whether they would expose themselves to the unreasonably dangerous asbestos products of said Defendants and/or the alternate entities. As a

1  direct and proximate result of the aforesaid actions, Decedent Jordan J. Potter was exposed as
2  alleged and contracted the disease set forth herein.

3     56.   As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter suffered permanent injuries to his person and the mental and emotional distress attendant thereto all to his general damage in a sum in excess of $75,000.00.

     57.   As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount being unknown to Plaintiff at this time, but Plaintiff prays leave to amend this complaint when the true and exact cost is ascertained.

     58.   As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are still unknown; therefore, Plaintiff will request leave to amend this complaint to conform to proof at the time of trial.

     59.   Defendants' and/or the alternate entities' conduct, as described herein, was intended by defendants and/or the alternate entities to cause injury to Decedent or was carried on by these defendants and/or the alternate entities with such conscious disregard for the safety and health of persons such as Decedent who were exposed to asbestos as to be willful, malicious, oppressive, fraudulent and outrageous under NRS Section 42.005, thereby entitling Decedent to punitive damages in the amount in excess of $75,000 against defendants, each of them.

60. Due to defendants' and/or the alternate entities' conduct, it has become necessary for Plaintiff to retain the law firm of MAUNE RAICHLE FRENCH & MUDD LLC and CRAIG P. KENNY & ASSOCIATES to prosecute this action, and Plaintiff is entitled to reasonable attorneys' fees and costs incurred therein.

### Fourth Cause of Action

(False Representation Under Restatement of Torts Section 402-B)

61. Plaintiff incorporates paragraphs 1 through 60 of this complaint as though fully set forth herein, except to the extent any averments may be inconsistent with any alternative liability claims or relief sought in this Count or elsewhere.

62. At all times relevant, defendants and/or the alternate entities, individually, together, and/or as a group, expressly and impliedly represented to members of the general public, including the purchasers and users of defendants' and/or the alternate entities' asbestos and/or asbestos-containing products and other individuals exposed to thereto, including Decedent Jordan J. Potter, that said asbestos and/or asbestos-containing products were of merchantable quality and safe for the use for which they were intended.

63. The purchasers and users of said asbestos and/or asbestos-containing products, and other individuals exposed thereto, including Decedent Jordan J. Potter, relied upon said representations of defendants and/or the alternate entities, individually, together, and/or as a group, in the selection, purchase and use of asbestos and/or asbestos-containing products.

64. Said representations of defendants and/or the alternate entities, individually, together, and/or as a group, were false, and defendants and/or the alternate entities knew at the time that they were false, in that asbestos and/or asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by defendants and/or the

alternate entities because said asbestos and asbestos-containing products have dangerous properties and defects that cause asbestosis, other lung damage, and cancer to the users and others exposed to the asbestos, thereby threatening the health and life of said persons, including Decedent Jordan J. Potter.

65. As a direct and proximate result of the above-mentioned false representations by defendants and/or the alternate entities, individually, together, and/or as a group, Decedent Jordan J. Potter sustained the injuries and damages alleged herein.

66. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter suffered permanent injuries to his person and the mental and emotional distress attendant thereto all to his general damage in a sum in excess of $75,000.00.

67. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount being unknown to Plaintiff at this time, but Plaintiff prays leave to amend this complaint when the true and exact cost is ascertained.

68. As a direct and proximate result of the aforesaid conduct of defendants and/or the alternate entities, Decedent Jordan J. Potter incurred loss of income, wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are still unknown; therefore, Plaintiff will request leave to amend this complaint to conform to proof at the time of trial.

69. Defendants' and/or the alternate entities' conduct, as described herein, was intended by defendants and/or the alternate entities to cause injury to Decedent or was carried on

by these defendants and/or the alternate entities with such conscious disregard for the safety and health of persons such as Decedent who were exposed to asbestos as to be willful, malicious, oppressive, fraudulent and outrageous under NRS Section 42.005, thereby entitling Decedent to punitive damages in the amount in excess of $75,000 against defendants, each of them.

70. Due to defendants' and/or the alternate entities' conduct, it has become necessary for Plaintiff to retain the law firm of MAUNE RAICHLE FRENCH & MUDD LLC and CRAIG P. KENNY & ASSOCIATES to prosecute this action, and Plaintiff is entitled to reasonable attorneys' fees and costs incurred therein.

### Fifth Cause of Action

### (WRONGFUL DEATH/SURVIVAL ACTION)

71. Plaintiff incorporates paragraphs 1 through 70 of this complaint as though fully set forth herein.

72. Each of the Defendants had a duty to exercise a reasonable degree of care, caution, diligence and foresight.

73. Defendants breached such duties and thereby committed negligence causing serious injuries ultimately resulting in the death of Jordan J. Potter.

74. As a direct and proximate result of the aforementioned breach, Jordan J. Potter suffered severe physical and mental pain and suffering prior to his death.

75. That June Potter, Special Administrator of the Estate of Jordan J. Potter, deceased, hereby states a cause of action pursuant to N.R.S. 41,085 and 41.100 and request all the damages attended thereto, and allowed by law.

76. That the acts of Defendants, and each of them, were extreme and outrageous and caused Plaintiff's severe emotional distress which is all to Plaintiff's damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### Prayer for Relief

WHEREFORE, Plaintiff prays judgment against Defendants as follows

1. For special damages in excess of $75,000;
2. For general damages in excess of $75,000;
3. For punitive damages in excess of $75,000;
4. For prejudgment and post-judgment interest;
5. For reasonable attorneys' fees and costs of suit incurred; and
6. For such other and further relief as the Court finds just and proper.

### JURY DEMAND

77. Pursuant to FRCP 38, Plaintiff hereby demands trial by jury.

DATED the 25th day of January, 2023

    MAUNE RAICHLE HARTLEY FRENCH & MUDD LLC
    /s/ Brian F. Ladenburg, Esq.
    By: _____
    Brian F. Ladenburg, *Pro Hac Vice*
    1200 Fifth Avenue, Suite 1400
    Seattle, WA  98101
    Phone: (800) 358-5922 /Fax: (314) 241-4838
    bladenburg@mrhfmlaw.com

    CRAIG P. KENNY & ASSOCIATES
    By: _____
    Lawrence E. Mittin, Esq.
    Nevada Bar No.  005428
    501 S. 8th Street
    Las Vegas, NV  89101
    (702) 380-2800 /Fax:  (702) 380-2833
    lmittin@cpklaw.com
    *Attorneys for Plaintiff*